# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Danny Kwami Barnes, | Civil No.:  12cv2745 (PAM/SER) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Steve Hammer, and Attorney General of the State of Minnesota, | |
| Defendants. | |

STEVEN E. RAU, United States Magistrate Judge

This matter is before the on the petition of Danny Kwami Barnes, ("Petitioner"), for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   Respondents have filed an answer to the petition, and the issues have been briefed fully by the parties.   The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.   For the reasons discussed below, the Court recommends that Petitioner's habeas corpus petition be **DENIED**, and that this action be **DISMISSED WITH PREJUDICE**.

## I.  BACKGROUND

Petitioner is a Minnesota state prison inmate.   He is presently serving a 138-month prison sentence, that was imposed after he was found guilty of kidnapping, first degree burglary with a dangerous weapon, second degree assault with a dangerous weapon, fifth degree assault, and aiding and abetting fifth degree assault.   Petitioner was convicted following a two-day trial in Big Stone County, Minnesota.   Petitioner waived his right to a jury trial and the case was tried before a state district court judge.

Petitioner now claims that his convictions and his sentence should be vacated, because he

was deprived of his constitutional right to effective assistance of counsel during the pre-trial stage of his state criminal case.    Specifically, he contends that his attorneys did not properly advise him about (a) his potential prison sentence, and (b) whether he should accept a proffered plea agreement.

After his conviction and sentencing, Petitioner filed a direct appeal.    The Minnesota Court of Appeals' subsequent decision on that appeal provides the following summary of the factual background of this case:

> In June 2009, Barnes was the pastor of Thy Kingdom Come church in the city of Wheaton.    He was concerned at that time about a member of the church, M.B., who had strayed from the church's teachings by using drugs and alcohol and by leaving his wife and child, who remained with the congregation, and moving into a home with people who were not members of the congregation.
>
> On the evening of June 22, 2009, Barnes led a group of six or more parishioners on an expedition to capture M.B. from the home where he recently had been staying and to take him to the home of the man's father, C.B., who was an assistant pastor of the church.    The group entered the home at approximately 11:00 p.m. by smashing a glass door.    They found M.B. hiding under a bed, beat him, dragged him down a flight of stairs, beat him again, placed him in a vehicle, and drove him to C.B.'s home.    Barnes's party also threatened the other four residents of the home and physically assaulted one of them.    The details of the home invasion were described extensively at trial but need not be repeated here.[1]    Several persons reported the incident to law-enforcement officials by telephone.    Big Stone County and Traverse County sheriffs' deputies arrested Barnes that night at C.B.'s home and detained him at the Traverse County jail.
>
> Two days after the incident, the state filed a complaint that charged Barnes with four offenses.    The state later amended the complaint to allege 14 offenses, including kidnapping, burglary, assault with a dangerous weapon, criminal damage to property, false imprisonment, terroristic threats, and simple assault.    On July 13, 2009, the state served Barnes with notice of its intention to seek an aggravated sentence due to (1) the commission of the crime by a party of three or more, (2) the

---

[1]    The trial judge's written decision following Petitioner's trial provides a more detailed description of the home invasion.    (Respondents' Third Set of Exhibits, Exhibit 6, [Docket No. 12-6].)    The transcript from the trial is included in the present record in Respondents' First Set of Exhibits.    (Docket No. 10.)

multiple victims, and (3) the use of a firearm during commission of the crime."

State v. Barnes, No. A10-792 (Minn.App. 2012), 2012 WL 762177 at *1 (unpublished opinion), rev. denied, May 30, 2012.

During the first several weeks after the charges were filed, Petitioner represented himself without a lawyer, but beginning in July 2009, a public defender named Kenneth Hamrum represented him. Hamrum informed Petitioner that if he were found guilty of a crime involving a gun, he would be sentenced to a mandatory minimum of 36 months in prison, and if he were found guilty of multiple offenses, he could be facing additional prison time. (Hamrum provided this information at a post-conviction evidentiary hearing. The transcript from that hearing is included in the present record as Petitioner's Appendix E, [Docket No. 3-5], [hereafter "PCT"].)

While Hamrum was representing Petitioner, the County Attorney offered a plea deal that would have required Petitioner to plead guilty to one of the charges against him. The proposed deal called for a 36-month prison sentence, and dismissal of the remaining charges. Hamrum conveyed the plea offer to Petitioner, who was unwilling to accept it. According to Hamrum, Petitioner was not interested in a plea agreement that involved a prison term. (PCT, p. 68.) Furthermore, Petitioner wanted to work out an agreement that would help some of the other people who had been charged in connection with the home invasion and kidnapping. (Id.)

Shortly before Petitioner's case was scheduled to go to trial in October 2009, he discharged Attorney Hamrum and sought other counsel. The trial was postponed, and Petitioner retained Attorney Jerome Lewis to represent him. Lewis quickly asked Attorney Mitchell Robinson to serve as co-counsel. Petitioner met with Lewis and Robinson, and paid them separate retainers totaling $25,000.

Petitioner's trial was rescheduled for January 2010. Petitioner was being held in jail

pending the trial.[2]   While in jail, Petitioner had several telephone conversations with his attorneys.   Some of those conversations were recorded, (presumably by jail personnel), and the transcripts of those conversations are included in the current record.   (Petitioner's Exhibits, [Docket No. 3-1], [hereafter "Tel.Tr."].)   Those conversations show that Petitioner and his attorneys vacillated about whether Petitioner should go to trial, or try to enter into a plea agreement.

Initially, Petitioner believed Attorney Robinson was advising him to accept the 36-month prison sentence plea agreement previously offered to Attorney Hamrum.   (Tel.Tr., p. 1.) Petitioner told Attorney Lewis that he was not pleased with that advice, commenting that "I could have took that deal four months ago," and "I'm ready for trial."   (*Id*., pp. 1, 2.)   Lewis told Petitioner that Robinson might have been concerned about Petitioner's defense, because "some of the witnesses have changed their story," but he assured Petitioner "we're ready" for trial.   (*Id*., p. 2.)   Shortly thereafter, Lewis told Petitioner that the proffered plea agreement might not be available indefinitely, but Attorney Robinson "is not telling you to take it, [and] I don't think you should take it either, for that matter."   (*Id*., p. 3.)   When Petitioner told Lewis that Robinson seemed to have some concerns about going to trial, Lewis reiterated that he and Robinson were **not** recommending that Petitioner should accept the proposed plea agreement.   (*Id*., p. 4.)   Lewis specifically stated, "I would not take the three years, no."   (*Id*.)   In fact, Lewis repeatedly advised Petitioner that he should not accept the plea agreement calling for a 36-month sentence, (id., pp. 4-7), and they should "try for something better," (*id*., p. 6.)   Robinson also said that he was not

---

[2]   Petitioner apparently was out of custody, (presumably on bail), during much of the time between his arrest and the start of his trial.   The Court has not been able to determine exactly when (or why) Petitioner was taken back into custody before his trial began.

advising Petitioner "to take a three year prison offer." (*Id.*, p. 8.) Petitioner appeared to accept that advice, telling Lewis, "I don't mind going to trial." (*Id.*, p. 6.)

Although Petitioner asserted that he was ready to try the case, he remained concerned about any sentence that might be imposed upon a guilty verdict. He told Robinson "there's a chance that the sentence I'm looking at on my complaint is between fifteen and twenty-five years." (*Id.*, p. 9.) Petitioner reiterated, however, that he was not prepared to accept the 36-month plea deal presented to Attorney Hamrum before Lewis and Robinson were retained. He told Robinson, "For me to spend $25,000 and not do better than I was doing before we started, then that's not acceptable to me." (*Id.*, p. 11.)

At one point during these attorney-client conversations, Attorney Robinson pointed out that if Petitioner accepted the plea proposal, he probably would be out of prison in about two years. He also reminded Petitioner that if he were to be acquitted, then of course he would not spend any time in prison. Finally, he opined that if Petitioner went to trial and was found guilty, "my feeling is, if we lose, I don't see the Judge giving you more than 46 months." (*Id.*, p. 9.) Petitioner questioned whether his sentence really would be that short, pointing out that "the Sentencing Guidelines and what the charges carry is more than 48 months," and, in fact, "the paperwork and my grid... shows 15 to 25." (*Id.*, p. 10.) Robinson insisted that his 46-month prediction was not an "arbitrary" guess, but Petitioner again challenged Robinson, asking him – "With my criminal history?" (*Id.*) Robinson then acknowledged that he did not know Petitioner's criminal history, which obviously meant that Robinson's sentencing prognostications did not take into account Petitioner's criminal history. (*Id.*)

Robinson also predicted that Petitioner would have a "50/50 shot of winning this at trial," but he offered no explanation for that prediction. (*Id.*, p. 12.) He merely stated, "I know what

I'm doing." (*Id.*) Petitioner was not happy to hear Robinson's "50/50" prediction "a week before trial." (*Id.*, p. 13.) Robinson responded that his earlier assessments, which apparently were more optimistic, had been made before he had reviewed the evidence, and thus, he did not previously have "a firm grasp of the case we're dealing with." (*Id.*) When Petitioner reiterated that he did not like Robinson's "50/50" assessment, Robinson reminded Petitioner that he still could "take the three-year deal." (*Id.*) Petitioner stated that if he accepted the three-year deal, instead of going to trial, he expected Robinson and Lewis to refund part of his retainer. Robinson flatly rejected that notion, telling Petitioner: "I am not refunding any money. I was paid to do a job. I'm prepared to do a job. I'm ready to do it." (*Id.*, p. 14.) At that point, Petitioner refused to discuss the matter any further, and cryptically told Robinson, "we'll just leave everything the way it is and I'll set up grounds for an appeal." (*Id.*, p. 14.)

The next recorded conversation was between Petitioner and Attorney Lewis. Petitioner expressed concern about how the trial appeared to be shaping up, telling Lewis that the prosecution had 40 witnesses lined up, and Robinson had not even heard Petitioner's "side of the story." (*Id.*, p. 17.) Petitioner also questioned Robinson's predictions regarding his prospects for acquittal and potential prison sentence. Lewis tried to assure Petitioner that Robinson was a skilled trial lawyer, and the case probably would still be resolved with "a good deal" in any event. (*Id.*) Petitioner challenged Lewis, asking him what would happen if the case did **not** get resolved. He reminded Lewis that he would still be facing "15 to 25 years" on the various charges against him, and Lewis did not disagree. (*Id.*, p. 18.)

Later that evening, Petitioner talked to Attorney Robinson about possible plea bargains. Robinson reported that the County Attorney had rejected a plea proposal involving probation and a ten-year sentence that would be stayed. (*Id.*, p. 20.) The County Attorney told Robinson that

Petitioner "needs to go to prison" and he was "standing firm" on the offer of 36 months. (*Id.*) Robinson indicated that he was waiting to hear back from the County Attorney about another plea proposal that would include a 36-month prison term, but would dismiss the charges that were pending against another party who had been involved in the home invasion crimes. (*Id.*)

The other party that Robinson and Petitioner were referring to was a man named Chuck Bauer, who was an assistant pastor at Petitioner's church. It was Bauer's son, Max, who was pulled out from under a bed and forcibly abducted during the home invasion. Bauer was facing felony charges as a result of his own involvement in the home invasion, and Petitioner wanted to help Bauer. Petitioner hoped that the County Attorney would dismiss the charges against Bauer, if Petitioner agreed to enter into a plea agreement calling for a 36-month sentence for himself.

On January 4, 2010, Robinson informed Petitioner that the County Attorney would not accept Petitioner's proposal. The County Attorney, however, made a counterproposal that would "allow Chuck Bauer to enter a plea of guilty to a felony charge that he'll work out with Chuck Bauer's attorney... with a stay of imposition." (*Id.*, p. 22.) Under the terms of that proposal, if Bauer successfully completed a period of probation, the felony would be "drop[ped] off his record." (*Id.*) Robinson told Petitioner that he had specifically talked to the County Attorney about whether Bauer could plead guilty to a misdemeanor, rather than a felony, but the County Attorney insisted this was his "bottom line," and Bauer had to "plead to a felony." (*Id.*) After hearing this report from Robinson, Petitioner said that he would have to find out whether Bauer would accept the proposal. (*Id.*) Petitioner continued to insist that he wanted to help Bauer, and he wanted a plea deal that was better than the original deal offered to Attorney Hamrum a few months earlier. (*Id.*, pp. 23-24.)

Later that afternoon, in the last recorded communication between Petitioner and his

counsel in this record, Petitioner left a voicemail message for Robinson:

> Yeah, Pastor Chuck [i.e., Bauer] said that he cannot have any felonies on his record at all so we're going forward with trial unless you come up with something else but we'll go to trial and win. Thank you. And I'm sorry.

(*Id.*, p. 26.)

A few days later, Lewis and Robinson tried the case on behalf of Petitioner. As previously noted, Petitioner waived his right to a jury, and the trial judge found him guilty on five counts. He was sentenced to a 138 months in prison – nearly four times as long as the 36-month sentence in the plea deal offered by the County Attorney.

Petitioner filed an appeal shortly after he was convicted and sentenced, but he asked to have his appeal stayed, so he could file a post-conviction motion. The stay request was granted, and Petitioner then filed a post-conviction motion in the trial court claiming that he had been deprived of his constitutional right to effective assistance of counsel. Petitioner argued that Attorneys Lewis and Robinson did not provide him with competent legal representation during the plea bargaining discussions preceding trial.

On March 2, 2011, the trial court conducted an evidentiary hearing on Petitioner's post-conviction motion. New counsel represented Petitioner and he offered his own testimony in support of his ineffective assistance claim. The trial court also heard testimony from Attorney Hamrum, (the public defender who originally represented Petitioner), and from Attorney Robinson. In addition, the trial court record included transcripts of the conversations between Petitioner and his attorneys, and a video recording of a church sermon that Petitioner gave within a week or two after he was charged with the home invasion offenses.

In the video-recorded sermon that was introduced during the post-conviction proceedings,

Petitioner told the congregation that "theoretically" he had been involved in the home invasion.[3] Petitioner acknowledged that he could be facing up to 24 years in prison, because he had "theoretically escorted" Chuck Bauer's son, Max, "out of the building." Petitioner also told the congregation that if he did go to prison for 24 years, "it'll be worth it," because he was willing to lay down his life for a brother. (A partial transcript of the sermon is included in the record at Respondents' Exhibit K, [Docket No. 11-3].)

During this evidentiary hearing, Petitioner was asked how he knew that he could be facing 24 years in prison, as he had stated during his sermon. Petitioner indicated that he said he looked at a "piece of paper" that he had received from the County Attorney, (i.e., a charging document), and he had added up the potential prison sentences listed for the various charged offenses. (PCT, p. 16.)

The trial court judge denied Petitioner's post-conviction motion in a 21-page decision. (A copy of that decision is included in the present record as Petitioner's Appendix B, [Docket No. 3-2], [hereafter "PC-Dec."].) Applying the standards and criteria prescribed by *Strickland v. Washington*, 466 U.S. 668 (1984), the judge concluded that Petitioner's claim of ineffective assistance of counsel was unsustainable, because he had not shown (a) that his attorneys' performance "failed to satisfy objectively reasonable standards," and (b) that he was prejudiced by any shortcomings of his legal representation. (PC-Dec., p. 18.) On the prejudice issue, the judge found that Petitioner failed to establish that he would have accepted the 36-month plea deal, if not for the allegedly incompetent legal advice. (*Id.*) The judge stated that "[t]he testimony of both

---

[3] Although Petitioner used the terms "theoretical" and "hypothetical," it is readily apparent that he was talking about his own actual involvement in the home invasion. Petitioner offers no argument to the contrary.

Mr. Hamrum and Mr. Robinson, plus the content of some of the recorded telephone conversations, makes it clear that the reason [Petitioner] did not accept the 36 month plea offer was because he could not get favorable treatment for co-defendant Chuck Bauer."  (*Id.*)

After denial of Petitioner's post-conviction motion by the Minnesota Court of Appeals considered his appeal.   The Court of Appeals first rejected two claims not at issue here, and then considered Petitioner's ineffective assistance of counsel claim.

> The Court of Appeals began by reciting the controlling legal principles:
> The right to the assistance of counsel includes the right to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686... (1984).   To prevail on a claim of ineffective assistance of counsel, a postconviction petitioner 'must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, **and** (2) a reasonable probability exists that, but for his counsel's unprofessional error, the outcome would have been different.'  *Leake v. State*, 767 N.W.2d 5, 10 (Minn.2009)....   The right to the effective assistance of counsel applies at the time of a decision to reject a plea bargain.  *Leake v. State*, 737 N.W.2d 531, 540-41 (Minn.2007); *see also Hill v. Lockhart*, 474 U.S. 52, 57-59... (1985).   In that context, 'an attorney's advice falls below objectively reasonable standards ... when the attorney's inaccurate or misleading factual statements tend to affect a defendant's decision to reject a plea bargain and proceed to trial.'  *Leake*, 737 N.W.2d at 540.

*Barnes*, 2012 WL 762177 at *5 (emphasis added).

The Court of Appeals did not address the trial court's determination on the first prong of the *Strickland* test – i.e., that the legal representation provided by Petitioner's attorneys did not fall "below an objective standard of reasonableness."   Instead, the appellate court focused on the second prong of the *Strickland* test – i.e., whether Petitioner was prejudiced by his attorneys' alleged mistakes.  *Id.*, at *6.   The Court of Appeals upheld the trial court's conclusion that Petitioner failed to satisfy *Strickland*'s prejudice requirement, because he "failed to prove that he would have accepted the plea offer even if Lewis and Robinson had fully informed him of the possibility of an upward departure and a resulting sentence of 138 months."  *Id.*

The Court of Appeals cited three specific matters supporting the trial court's determination that Petitioner's attorneys' allegedly deficient legal representation did not prejudice him. First, the record showed that despite any omissions by his attorneys, Petitioner was aware that he faced a lengthy prison term if convicted of the charges pending against him. He knew this based on his own reading of the charging documents, and he demonstrated this knowledge during the sermon that he gave shortly after being charged. *Id*. In addition, Petitioner was aware that he could receive a lengthy prison sentence based on his conversations with the public defender who initially represented him. *Id*. at *7. "Third, and most importantly, the postconviction court found that [Petitioner] was interested in pleading guilty only in exchange for the state's lenient treatment of co-defendant," Chuck Bauer. *Id*.

The Minnesota Court of Appeals summarized the resolution of Petitioner's ineffective assistance of counsel claim as follows:

> [T]he postconviction court found that, throughout the period between the filing of the complaint and the trial, [Petitioner] was aware of the possibility of a long prison sentence but was not dissuaded from going to trial unless his guilty plea would allow his co-defendant [Chuck Bauer] to avoid prosecution. Given the evidence in the record and the postconviction court's predicate findings, we conclude that the postconviction court did not abuse its discretion by finding that [Petitioner] did not prove the second prong of the *Strickland* test.... [Citation omitted.] Accordingly, the postconviction court did not err by denying postconviction relief on [Petitioner's] claim of ineffective assistance of counsel.

*Id*.

Petitioner requested the Minnesota Supreme Court for further review of his ineffective assistance of counsel claim; that application was denied on May 30, 2012. Approximately five months later, Petitioner filed this application for federal habeas corpus relief. Here, Petitioner once again contends that he was deprived of his constitutional right to effective assistance of counsel, because his attorneys did not provide competent legal representation in connection with

11

the plea bargaining discussions preceding his trial.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern substantive review of Petitioner's Sixth Amendment ineffective assistance of counsel claim.   The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how federal district courts should apply it.   The Supreme Court recognized that

> a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways.   First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.   Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Id.* at 405.

> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 413.

The Court also explained that

A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was **objectively unreasonable**.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 411 (emphasis added).

A writ of habeas corpus can also be granted if the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be available if the conviction at issue is based on findings of fact that could not reasonably be derived from the state court evidentiary record.

Needless to say, a federal district court is not allowed to conduct its own *de novo* review of a prisoner's constitutional claims. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("[w]e cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter"). "AEDPA ... imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt'...." *Renico v. Lett* 130 S.Ct. 1855, 1862 (2010) (citations omitted). Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*, and later decisions. The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011).

Guided by these principles, the Court has considered whether Petitioner is entitled to a writ of habeas corpus on his current ineffective assistance of counsel claim.

## III. DISCUSSION

### A. Controlling Supreme Court Precedents

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court prescribed the two elemental requirements for an ineffective assistance of counsel claim. The claimant must establish (1) that his attorney did not provide reasonably competent legal representation, i.e., that his attorney's performance "fell below an objective standard of reasonableness," (*id*. at 688), and (2) that he was prejudiced by his attorney's inadequate performance, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," (*id*. at 694). When evaluating whether a criminal defendant has received reasonably competent legal representation, a court must be mindful of the "strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance." *Id*. at 689. "Counsel's challenged conduct is to be evaluated in light of the circumstances surrounding the decision, not with the 20/20 vision of hindsight." *Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir.), *cert. denied*, 519 U.S. 956 (1996). In order to satisfy the second *Strickland* requirement, a habeas petitioner must demonstrate that there is a "reasonable probability that the proceeding would have ended in a different result without counsel's errors." *Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S.Ct. at 792 (citing *Strickland*, 466 U.S. at 693).

Recently, the Supreme Court confirmed that a criminal defendant's Sixth Amendment right to competent legal representation "extends to the plea-bargaining process." *Lafler v. Cooper*, 132

S.Ct. 1376, 1384 (2012), citing *Missouri v. Fry*, 132 S.Ct. 1399, 1407-08 (2012). In order to satisfy the *Strickland* prejudice requirement in a plea-bargaining case, a criminal defendant claiming ineffective assistance of counsel "must show the outcome of the plea process would have been different with competent advice." *Id*. When a proffered plea agreement has been declined because of allegedly incompetent legal advice, the claimant must show that –

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id*. at 1385.

> *Lafler* validates an earlier Eighth Circuit's ruling. The Eighth Circuit noted:

> [A] large body of federal case law holds that a defendant who rejects a plea offer due to improper advice from counsel may show prejudice under *Strickland* even though he ultimately received a fair trial.... To establish prejudice under such circumstances, the petitioner must show that he would have accepted the plea but for counsel's advice, and that had he done so he would have received a lesser sentence....

*Wanatee v. Ault*, 259 F.3d 700 (8th Cir. 2001) at 703-04 (citations omitted).

In short, if a criminal defendant turns down a *bona fide* plea offer because of incompetent legal advice, and if he subsequently goes to trial and incurs a conviction and sentence more onerous than the terms of the rejected plea offer, he can claim that he was deprived of his Sixth Amendment right to effective assistance of counsel. To prevail on such a claim, the defendant must establish that (1) his attorney did not provide objectively reasonable legal assistance, and (2) the plea offer would have been consummated, but for the deficient performance of his attorney.

B. The State Courts' Resolution of Petitioner's Claim

The Supreme Court's decision in *Lafler* was handed down on March 21, 2012, which was

nine days **after** the Minnesota Court of Appeals handed down its decision on Petitioner's ineffective assistance of counsel claim, but 70 days **before** the Minnesota Supreme Court denied Petitioner's application for further review. The U.S. Supreme Court construes 28 U.S.C. § 2254(d)(1) as requiring federal courts to "'measure state-court decisions 'against this Court's precedents **as of 'the time the state court renders its decision**.''" *Greene v. Fisher*, 132 S.Ct. 38, 44 (2011), quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1399 (2011), and *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (emphasis added). Because *Lafler* was decided before Petitioner's conviction and sentence became final on direct review, *Lafler* constitutes "clearly established Federal law, as determined by the Supreme Court of the United States," for purposes of adjudicating Petitioner's current habeas corpus claim in accordance with § 2254(d)(1). *See Guinn v. Kemna*, 489 F.3d 351, 353 (8th Cir. 2007) ("'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision'") (quoting *Lockyer*, *supra*), *cert. denied*, 552 U.S. 1286 (2008).

Although the Minnesota Court of Appeals did not have the benefit of *Lafler* while ruling on Petitioner's ineffective assistance of counsel claim, that Court's analysis of Petitioner's claim is consistent with *Lafler's* principles. The Court of Appeals recited the two-prong *Strickland* process for evaluating ineffective assistance claims expressly acknowledged that "[t]he right to the effective assistance of counsel applies at the time of a decision to reject a plea bargain." *Barnes*, 2012 WL 762177 at *5.

When Petitioner applied to the Minnesota Supreme Court for further review of his case, he cited *Lafler* to support his ineffective assistance of counsel claim. (*See* Respondent's Exhibit J, [Docket No. 11-2].) Presumably, the Minnesota Supreme Court found nothing in the *Lafler* decision that undermined the Court of Appeals' resolution of Petitioner's ineffective assistance of

16

counsel claim.   In short, it is evident that the Minnesota appellate courts used the correct general legal principles – namely the principles prescribed by *Strickland* and *Lafler* – to decide Petitioner's ineffective assistance of counsel claim.

Although the trial court judge found that Petitioner failed to satisfy either of the two prongs of the *Strickland* test, the Court of Appeals relied solely on the prejudice prong.   *Barnes*, 2012 WL 762177 at *6.[4]   The Court of Appeals did not discuss whether Petitioner's attorneys represented him with "objectively reasonable" competence.[5]   Instead, the Court focused on whether Petitioner had demonstrated that he had been prejudiced by any shortcomings in his attorneys' performance.   The Court of Appeals described the prejudice test as follows:

> In the context of alleged misadvice in connection with a plea offer, 'a defendant is prejudiced by ... ineffective assistance if there is a reasonable likelihood the plea bargain would have been accepted had the defendant been properly advised.'

*Id.*, quoting Leake, 737 N.W.2d at 540.   This explication of the prejudice test is consistent with *Lafler*.   *See Lafler*, 132 S.Ct. at 1391 (prejudice requirement is satisfied where claimant "has

---

[4]   This practice has been explicitly endorsed by the U.S. Supreme Court.   As the Court explained in *Strickland*:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.   In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.   The object of an ineffectiveness claim is not to grade counsel's performance.   If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697.

[5]   The Court of Appeals apparently elected to heed the maxim that 'if you can't find something nice to say about someone, don't say anything at all.'

shown that but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea").[6]

After describing the *Strickland* prejudice test correctly, the Minnesota Court of Appeals considered whether the trial court applied that test to the evidence presented in Petitioner's case correctly. The Court of Appeals upheld the trial court's determination that Petitioner could not satisfy *Strickland's* prejudice requirement. *See Barnes*, 2012 WL 762177 at *7 ("[g]iven the evidence in the record and the postconviction court's predicate findings, we conclude that the postconviction court did not abuse its discretion by finding that Barnes did not prove the second prong of the *Strickland* test"). The Minnesota Supreme Court declined to overturn that ruling, and Petitioner now wants this Court to overturn it.

C. <u>AEDPA Analysis</u>

When a state prisoner seeks a writ of habeas corpus based on ineffective assistance of counsel, he faces a very steep uphill battle. Recently, the Eighth Circuit Court of Appeals explained:

> Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review. *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1410, 179 L.Ed.2d 557 (2011) (internal quotation omitted). First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is 'reasonably likely' that the result would have been different absent the errors. *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052. The *Strickland* prejudice standard is less demanding than a more-probable-than-not standard, but the difference is 'slight and matters only in

---

[6]  The State Court of Appeals used the phrase "reasonable likelihood," while *Lafler* uses the phrase "reasonable probability," but Petitioner has not identified any significance in that discrepancy, and the Court can find none. Indeed, *Strickland* itself says that "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would **reasonably likely** have been different absent the errors." 466 U.S. at 696 (emphasis added). *See also Richter*, 131 S.Ct. at 792 ("*Strickland* asks whether it is 'reasonably likely' the result would have been different").

the rarest case.' *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011) (internal quotation omitted). To satisfy *Strickland*, the likelihood of a different result must be 'substantial, not just conceivable.' *Id.* Under AEDPA, we must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not 'contrary to' clearly established law, the remaining question under the 'unreasonable application' clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. *Id.* at 785. **This standard was meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable**.' *Id.* at 786.

*Williams v. Roper*, 695 F.3d 825, 831-32 (8th Cir. 2012) (emphasis added), *pet. for cert. filed* May 2, 2013.

As noted earlier, the Minnesota Court of Appeals correctly recognized that Petitioner's ineffective assistance claims must be decided based on the two-prong analysis prescribed by *Strickland*. *Strickland* is the correct measuring stick to use here. Therefore, Petitioner cannot show that the state court's decision was "contrary to" the apposite governing law as determined by the U.S. Supreme Court. *Bell v. Cone*, 535 U.S. 685, 698 (2002) (where "the state court correctly identified the principles announced in *Strickland* as those governing the analysis" of habeas petitioner's ineffective assistance of counsel claim, the state court's decision was not "contrary to" the Supreme Court's "clearly established law"). *Cf.*, *Lafler*, 132 S.Ct. at 1390 ("[b]y failing to apply *Strickland* to assess the ineffective-assistance-of-counsel claim respondent raised, the state court's adjudication was contrary to clearly established federal law").

As a result, the only remaining issue to be decided is whether the Minnesota Court of Appeals' application of *Strickland* was "objectively unreasonable" for purposes of § 2254(d)(1). *Bell*, 535 U.S. at 698. *See also Williams*, 529 U.S. at 417 (Rehnquist, C.J., concurring in part and dissenting in part) ("[g]enerally, in an ineffective-assistance-of-counsel case where the state court applies *Strickland*, federal habeas courts can proceed directly to 'unreasonable application'

19

review").  More specifically, this Court must determine whether Petitioner has ademonstrated that the Minnesota Court of Appeals' application of the *Strickland* prejudice requirement was "objectively unreasonable."[7]

### D.  State Court's Application of *Strickland*'s Prejudice Requirement

Petitioner contends that he was deprived of his constitutional right to effective assistance of counsel because (1) his attorneys did not properly advise him of the potential length of the prison sentence he could be facing if convicted on the charges pending against him, and (2) his attorneys should have advised him to accept the plea agreement that contemplated a 36-month prison sentence, which had been offered by the county prosecutor.  The state courts, (both trial and appellate), concluded that Petitioner was unable to satisfy *Strickland*'s prejudice requirement with respect to either of those two alleged errors.

The state courts first specifically considered whether Petitioner's attorneys' alleged failure to tell him that he could receive a prison sentence much longer than the prosecutor's plea offer of a 36-month term prejudiced him.   The trial court found, and the Court of Appeals agreed, that even if Petitioner's attorneys committed such an error, Petitioner was not prejudiced, because he already

---

[7]  "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact."  *Strickland*, 466 U.S. at 698.  "Since an ineffective assistance of counsel claim is a mixed question of law and fact,...  it is evaluated under the 'unreasonable application' clause of § 2254(d)."  *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 70 (1st Cir.), *cert. denied*, 558 U.S. 1031 (2009) (citing *Strickland*, 466 U.S. at 698, and *Williams*, 529 U.S. at 409).  *See also Tong Xiong v. Felker*, 681 F.3d 1067, 1074 (9th Cir. 2012) ("mixed questions of law and fact, including the prejudice determinations in... ineffective assistance of counsel petitions, are generally reviewed under section 2254(d)(1), not section 2254(d)(2)", *cert. denied*, 133 S.Ct. 989 (2013); *Johnson v. Stephens*, ___ Fed.Appx. ___(5th Cir. 2013), (unpublished opinion), 2013 WL 2500863 at *1 ("[b]ecause claims of ineffective assistance of counsel involve mixed questions of law and fact, they are controlled by 28 U.S.C. § 2254(d)(1)"); *Harris v. Konteh*, 198 Fed.Appx. 448, 454 (6th Cir. 2006) (unpublished opinion) (because "[a]n ineffective assistance of counsel claim poses a mixed question of fact and law," a federal habeas court "reviews the state court's decision under the 'unreasonable application' standard" prescribed by § 2254(d)(1)).

knew that his potential prison sentence could be much longer than 36 months if found guilty.   The evidence supports that finding.

As the state courts' record pointed out initially, within a matter of days after Petitioner was charged for the home invasion crimes, he announced to a church congregation that he could go to prison for 24 years if convicted on the charges that had been brought against him.   As explained by the Minnesota Court of Appeals:

> [T]he postconviction court relied on a video-recording of a sermon [Petitioner] delivered four days after being charged (and released on bail), in which [Petitioner] stated: 'I'm looking at 24 years in prison for that act.   If I get a sentence of 24 years, it'll be worth it, to me.'   The record supports the postconviction court's finding that [Petitioner] was aware of the possibility of a sentence longer than he actually received.

*Barnes*, 2012 WL 762177 at *6.   The state courts also observed that the public defender who represented Petitioner initially told him that if he were convicted of committing a crime with a gun, he would be facing a **mandatory minimum** of 36 months in prison, and potentially quite a bit more.   *Id.*; *see also* PCT pp. 64-66.

Petitioner's pre-trial conversations with Attorneys Lewis and Robinson also conclusively show that Petitioner knew he was facing a potential prison sentence that could be far longer than 36 months.   Petitioner clearly indicated, on at least two occasions during the plea discussions, that he understood he could go to prison for as long as 25 years.   (Tel.Tr., pp. 10, 18.)

The state courts determined that Petitioner could not show he was prejudiced by his attorneys' failure inform him about his potential sentence to adequately, because he already knew he could get a sentence far longer than the 36-month term of the plea offer.   That determination by the state courts was not "objectively unreasonable," because it is supported by (1) the videotape of Petitioner's sermon after he was charged, (2) the testimony of Petitioner's public defender, and (3)

Petitioner's own comments during his pre-trial conversations with his attorneys.

Petitioner also contends, more generally (and more vaguely), that his attorneys should have persuaded him to accept the 36-month plea deal. The state courts rejected this argument, because Petitioner failed to establish that he would have accepted the plea agreement if his attorneys had offered him more encouragement to do so. The record also supports that conclusion.

According to Petitioner's former public defender, Petitioner indicated that if he was going to accept any plea offer, it would have to involve "a *quid pro quo* that the other people that were co-defendants would be either let go entirely or given very favorable treatment." (PCP, p. 68.) Petitioner's testimony at the post-conviction evidentiary hearing confirmed this. Petitioner testified that he was most concerned about getting favorable dispositions for his co-defendants. (*Id.*, pp. 52-54.) In Petitioner's own words, his principal concern during the plea bargaining process "was freeing up the co-defendants." (*Id.*, p. 53.)

The state courts found that by the time of the final plea bargaining discussions, Petitioner's primary concern was Chuck Bauer. The state courts concluded that Petitioner ultimately turned down the 36-month plea deal, not because of any advice (or lack of advice) from his attorneys, but because the prosecutor refused to offer a deal that would have saved Chuck Bauer from a felony conviction. The last recorded statement by Petitioner before his trial supports that conclusion. Petitioner then told his attorneys:

> Yeah, Pastor Chuck [i.e., Bauer] said that he cannot have any felonies on his record at all so we're going forward with trial unless you come up with something else but we'll go to trial and win. Thank you. And I'm sorry.

(Tel.Tr., p. 26.) This statement confirms that Petitioner rejected the 36-month plea deal because it would not spare Bauer from a felony conviction.

The Minnesota Court of Appeals summarized:

[T]he postconviction court found that [Petitioner] was interested in pleading guilty only in exchange for the state's lenient treatment of co-defendant [Chuck Bauer]. The postconviction court found that [Petitioner] expressed his interest in securing leniency for co-defendants between July and October 2009. The postconviction court also found that when [Petitioner] met with Lewis and Robinson in late October or early November of 2009, '[Petitioner] made it clear from the outset that he wanted to go to trial and was not interested in a plea agreement, particularly if co-defendant [Chuck Bauer] was not going to receive favorable treatment in his case.' The postconviction court further found that, on January 3, 2010, Robinson made a counter-offer to the prosecutor for [Petitioner] to plead guilty, with an agreed-upon 36-month sentence, so long as the charges against [Chuck Bauer] were dismissed with prejudice. The postconviction court further found that Robinson informed [Petitioner] on January 4, 2010, that the prosecutor had rejected that counter-offer but had indicated a willingness to allow [Chuck Bauer] to plead guilty to a felony with a stay of imposition, which would allow [Chuck Bauer] to avoid incarceration. The transcripts of [Petitioner's] telephone communications reveal that [Petitioner] left a voice-mail message for Robinson later that same day in which he stated that [Chuck Bauer] 'said that he cannot have any felonies on his record at all so we're going forward with trial unless you come up with something else but we'll go to trial and win.' **Based on this voice-mail message, the postconviction court found that [Petitioner] would not have accepted the state's 36-month plea offer unless [Chuck Bauer] received appropriately favorable treatment and, thus, that [Petitioner's] decision to not plead guilty was not determined by the potential sentence**. The record supports each of these findings.

*Barnes*, 2012 WL 762177 at *7 (emphasis added).

Ultimately, the Court of Appeals concluded that the trial court "did not abuse its discretion by finding that [Petitioner] did not prove the second prong of the *Strickland* test," because Petitioner "was aware of the possibility of a long prison sentence but was not dissuaded from going to trial unless his guilty plea would allow his co-defendant to avoid prosecution." *Id.* Thus, the Court of Appeals held that Petitioner's ineffective assistance of counsel claim had been denied properly. *Id.*

Petitioner's brief in support of his current habeas corpus petition (Docket No. 2), argues that his trial attorneys were incompetent. But that argument misses the mark, because the Minnesota Court of Appeals did not rest its decision on the first prong of the *Strickland* test.

Instead, the Court of Appeals' decision rests solely on the prejudice prong.[8]  To succeed in the present habeas corpus proceeding, Petitioner must show that the Court of Appeals' decision on the prejudice prong was objectively unreasonable.  That is an extremely difficult burden to satisfy, and Petitioner has not accomplished that feat here.

Petitioner contends that "ineffective [assistance] claims present mixed questions of fact and law **subject to *de novo* review**."  (Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus, [Docket No. 2], p. 28, [emphasis added].)  The first part of this assertion is correct – ineffective assistance of counsel claims do present "mixed questions of fact and law."  (*See* n. 7, *supra*.)  But the second part of Petitioner's assertion is wrong, and therein lies the flaw in Petitioner's application for a writ of habeas corpus.  The state courts' resolution of Petitioner's ineffective assistance of counsel claim certainly is **not** "subject to *de novo* review."

Petitioner supports his bid for *de novo* review by citing *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005), *cert. denied*, 546 U.S. 1117 (2006).  That case, however, is inapposite, because it involved a federal prisoner's motion for post-conviction relief under 28 U.S.C. § 2255, rather than a state prisoner's petition for a writ of habeas corpus under § 2254.  This distinction is critical, because § 2255 motions do not present any of the concerns about comity and federalism that are important in § 2254 cases.  Mixed questions of fact and law may be reviewable *de novo* in § 2255 cases, but in § 2254 cases, such questions must be reviewed under the extremely

---

[8]  The Court has already intimated that Petitioner's legal representation left much to be desired.  (*See* n. 5, *supra*.)  Petitioner contends, in particular, that his attorneys were more interested in earning their fee than achieving a favorable result for him.  That argument is well taken, and troubling.  However, that argument pertains exclusively to the first prong of the *Strickland* analysis, and both the Minnesota Court of Appeals, and this Court, have determined that Petitioner's ineffective assistance of counsel claim should be decided based solely on *Strickland*'s prejudice requirement.

demanding standard prescribed by § 2254(d)(1). If Petitioner's ineffective assistance claim were subject to *de novo* review, as Petitioner erroneously believes it should be, the outcome of this case **might** be different. But this Court is **not** reviewing this case *de novo*; the Court is compelled to review the case in accordance with § 2254(d)(1), and the Supreme Court's interpretations of that statute.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,'... and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S.Ct. at 788 (citations omitted). "[U]nder § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell*, 535 U.S. at 699. "In reviewing whether the state court's decision involved an unreasonable application of clearly established federal law,... **the proper question is whether there is 'any reasonable argument' that the state court's judgment is consistent with *Strickland*.**" *Williams v. Roper*, 695 F.3d at 831-32, citing *Richter*, 131 S.Ct. at 788 and *Premo v. Moore*, 131 S.Ct. 733, 740 (2011) (emphasis added). If a federal district court does not "consider the prejudice question through the deferential lens of AEDPA," it commits "reversible error." *Williams v. Roper*, 695 F.3d at 839.

With these instructions in mind, this Court cannot recommend that Petitioner should be granted a writ of habeas corpus. The Court cannot conclude that the state courts' resolution of *Strickland's* prejudice requirement is wholly unsupported by any reasonable argument. The state courts determined that Petitioner was not prejudiced by his attorneys' alleged errors, because (a) he knew that he was facing a potential prison term longer than the 36-month term of the proffered plea deal, and (b) he would have rejected the plea offer in any event, because it did not protect Chuck Bauer from a felony conviction. Whether this Court would agree with this reasoning,

based on a *de novo* review, is irrelevant.   What is critical is that the state courts offered a reasoned explanation for their determination that Petitioner failed to satisfy *Strickland's* prejudice requirement.   Petitioner has failed to satisfy his burden of showing that the state court's resolution of the prejudice issue was objectively unreasonable.   Therefore, the Court must recommend that Petitioner's application for a writ of habeas corpus be denied.

## IV.   CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA").   28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).   A COA cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(3).   To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds it is unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's ineffective assistance of counsel claim any differently than it decided here.   Petitioner has not identified, (and the Court cannot independently discern), anything novel, noteworthy or worrisome about this case that warrants appellate review.   It is therefore recommended that Petitioner should **not** be granted a COA in this matter.

## V.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.   Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be **DENIED**;

2.   This action be **DISMISSED WITH PREJUDICE**; and

3. Petitioner should **NOT** be granted a Certificate of Appealability.


Dated:   August 29, 2013                                 *s/Steven E. Rau*
                                                          Steven E. Rau
                                                          U.S. Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 12, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.   A party may respond to the objecting party's brief within ten days after service thereof.   A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.